Honorable Richard D. Lamm Governor State of Colorado
Dear Governor Lamm:
The following constitutes my informal opinion in response to your request concerning Interstate 470 assurances.
QUESTION PRESENTED AND CONCLUSION
You have asked whether the State is able to give assurances to the United States Secretary of Transportation that a schedule for the expenditure of funds for the construction of I-470 will be met if the Governor does not intend to approve any expenditure for such purpose.
My conclusion is "no."
ANALYSIS
First, the Federal statute requiring assurances that the funding schedule will be met is Title 23, United States Code, Section 103(g) which reads in pertinent part:
 Any segment of the Interstate System, with respect to which a State has not submitted by July 1, 1975, a schedule for the expenditure of funds for completion of construction of such segment or alternative segment within the period of availability of funds authorized to be appropriated for completion of the Interstate System, and with respect to which the State has not provided the Secretary with assurances satisfactory to him that such schedule will be met, shall be removed from designation as a part of the Interstate System.
Assurance is generally defined in terms of some form of guarantee.Black's Law Dictionary, Fourth Edition, defines assurance as a "pledge, guarantee, or surety."
Second, in the context of a schedule of expenditures for construction of a state highway, a determination must be made, insofar as is reasonably possible, that all requirements for making expenditures be met before an assurance to meet a schedule can be given. The determination is dependent upon the statutory requirements relating to expenditures for highway projects.
Expenditure of funds for state highway projects are governed by the following statutes:
1. The Chief Engineer, subject to the approval of the Highway Commission must prepare a budget. C.R.S. 1973, 43-1-111(2).
2. The Governor and Controller must approve the budget. C.R.S. 1973,43-1-111(4).
3. No expenditure shall be made and no contract may be entered into for construction obligating state funds in excess of the budgeted amount. C.R.S. 1973, 43-1-111(6) and C.R.S. 1973, 43-1-223.
By statute, the Governor's approval of the budget is one of the necessary prerequisites to the expenditure of funds for state highway projects.
Third, in Watrous v. Chamber of Commerce, 121 Colo. 521, 218 P.2d 498
(1950) the authorization procedure for the construction of the Denver-Boulder Turnpike was challenged and the significance of the approval process was discussed:
 Before proceeding further, it is well to have clearly in mind the several steps taken by the State Highway Department, and the legislative and executive departments in respect to the Denver-Boulder turnpike. In 1949 the General Assembly enacted, and the Governor approved, House Bill No. 833, which conferred additional powers on the State Highway Department. It permitted the State Highway Department to adopt master plans for the development and improvement of the State Highway system; it permitted the State Highway Department to enter into contracts with the approval of the Governor; it authorized the State Highway Department to issue bonds payable in part from a certain described fund when approved by "the affirmative majority vote of the entire membership of the highway advisory board and the affirmative vote of the Governor and the State Engineer (said Board and Officers being the trustees of the State Highway Department)."
 It should be remembered that the Governor approved a resolution of the State Highway Advisory Board providing for the construction and operation of the Denver-Boulder turnpike and that there was set forth in the resolution the substantial requirements as to construction of the turnpike and the issuance and payment of bonds authorized by House Bill No. 833. In addition to the approval of the State Highway Advisory Board, the Governor and the State Engineer, the act provided in several places for the approval of the Denver-Boulder turnpike by joint resolution of the Senate and House of Representatives before it could become a reality. This approval by joint resolution was a condition precedent to the consummation of the Denver-Boulder turnpike project. The General Assembly, in enacting House Bill No. 833, and the Governor by his approval thereof, meticulously safeguarded the interests of the state. Thus it will be seen that before the construction and operation of a turnpike under House Bill No. 833 could be begun, it required the independent approval of the State Highway Advisory Board, the State Engineer, the Governor, and the General Assembly. Without the concurrence of all these, the Denver-Boulder turnpike could not become a reality, and, in our judgment, it was a wise provision that all of these necessary approvals be independent.
121 Colo. at pp. 545, 546.(Emphasis by the court.)
Thus, the Court emphasized the absolute necessity of each separate step of the approval process in finding that all approvals had been given.
SUMMARY
The General Assembly having provided for the Governor's approval of expenditures for state highways and the Supreme Court having indicated that all those with independent approval authority must concur before a project can become a reality, it is the opinion of the Attorney General that the State cannot assure the Secretary of the United States Department of Transportation that a schedule for the expenditure of funds for the construction of I-470 will be met if the Governor has made clear he will not approve the expenditure.

 Very truly yours,
 J.D. MacFARLANE
 Attorney General
PUBLIC FUNDS
HIGHWAYS

C.R.S. 1973, 43-1-111(2)
23 U.S.C. § 103(g)
EXECUTIVE BRANCH
Governor, Office of
HIGHWAYS, DEPT. OF

The state cannot assure the U.S. Secretary of Transportation that a schedule for the expenditure of highway funds will be met if the Governor has made it clear he will not approve the expenditures.(But see: StateHwy Comm'n. v. Haase, 189 Colo. 69, 537 P.2d 300 (1975).